Billy George JACKSON, Appellant,

v.

The STATE OF Texas, Appellee.

No. 60719.

Court of Criminal Appeals of Texas, Panel No. 1.

March 3, 1982.

J. Stephen Buchanan, Houston, for appellant.

Carol S. Vance, Dist. Atty., Michael Kuhn and Bill Taylor, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

Appellant appeals his jury conviction for committing the offense of aggravated robbery, see V.A.T.C. Penal Code, Sec. 29.03. The jury also assessed appellant's punishment at 20 years' confinement in the Texas Department of Corrections.

Because of appellant's contentions in his appeal we find that it is necessary to briefly set out the salient facts of the case. However, to put this cause in proper perspective, and to later show how appellant came to be arrested, we first note that the evidence shows that an unidentified person, who drove a Mercury automobile, had committed before the night in question several robberies and rapes in the area of Houston where the offense for which appellant was convicted was located.

The evidence also shows that shortly before appellant entered a Seven-Eleven store, located at 204 Little York, where the female complaining witness was working alone, she was robbed by another unidentified person. When appellant entered the store, the complaining witness was using the telephone to report the earlier robbery to the police. She thereafter attempted to wait on appellant.

After appellant entered the Seven-Eleven store, he robbed the complaining witness at gunpoint of what money she then had; approximately $20.00. After robbing the complaining witness, the appellant then forced her to accompany him from the store. Appellant then forced the complaining witness into an automobile, drove to a nearby school yard and parked the automobile. Shortly thereafter, appellant forced the complaining witness to perform oral sodomy on him, and then forced her to have sexual intercourse with him. After satisfying his lustful demands, the appellant then drove from the school yard, leaving the complaining witness at that location. Ap-

proximately 15 minutes later, appellant was arrested by a Harris County deputy sheriff when he was driving the above automobile—a Mercury.

The deputy sheriff testified that he stopped appellant's automobile when he observed from a short distance that the vehicle matched the description of the Mercury vehicle that had been used during the commission of the robberies and rapes before the morning in question.

After appellant drove from the school yard the complaining witness then walked to another Seven-Eleven store, where she later met Houston police officers. They obtained from her a description of her assailant-later shown to be the appellant. After the Houston officers were notified of the appellant's arrest by the Harris County deputy sheriff, they then went to where the deputy sheriff was located. There they observed appellant, who was then in the custody of the deputy sheriff. The description that the complaining witness gave them and that of appellant's appearance "matched perfectly ... down to the cuts in the jersey." Two bags of money, containing $309.29, a wallet, and a loaded pistol were recovered from the glove compartment of the Mercury automobile appellant had been driving when arrested.

After being arrested, appellant gave to the police a written confession, in which he impliedly admitted he had committed the robbery of the complaining witness. In his confession he made the following admissions: "I went to the Seven Eleven at 204 Little York and robbed a white girl working there."

Appellant also signed a waiver of the right to have counsel present at a line-up, appeared in a corporeal line-up, and was positively identified by the complaining witness as the person who robbed her the second time.

The trial judge conducted hearings outside of the jury's presence, after which the trial judge ruled that the pre-line-up and line-up procedures were in accordance with law, and also ruled that appellant's written confession, after certain deletions were made, was admissible in evidence.

Appellant first claims in his appeal that his in court identification was tainted by the fact that the complaining witness had been told by the police that her second robber, the appellant, had been arrested by the police, and also by the fact that he was the only person in the line-up clad in a football jersey. Appellant also claims that the complainant's in court identification of him as the robber was tainted by the prosecutor's pre-trial showing of a photograph of appellant to the complaining witness.

A defendant who contends on appeal that a trial court erred in allowing an in court identification of him by a complaining witness has a difficult and heavy burden to sustain, for unless it is shown by clear and convincing evidence that a complaining witness' in court identification of a defendant as the assailant was tainted by improper pre-trial identification procedures and confrontations, the in court identification is always admissible. Compare, *Proctor v. State*, 465 S.W.2d 759 (Tex.Cr.App.1971); *Coleman v. State*, 505 S.W.2d 878 (Tex.Cr. App.1974), which cases were reversed by this Court because the evidence that went to the in-court identification caused a substantial likelihood of irreparable misidentification.

The ultimate factor to be decided, where a complaining witness' in court identification is challenged, rests on how independent a witness' ability to reconstruct an accurate image of the criminal wrongdoer may be, in comparison with the appearance of the defendant in court.

At the hearing held out of the presence of the jury, regarding whether the complaining witness was to be allowed to make an in court identification of the appellant as her robber, appellant himself testified that one other person who was in the corporeal line-up was wearing a football jersey.

In this cause, the complaining witness at all times when she was confronted with the question of whether the appellant was her robber answered the question in the affirmative. During all times, including the trial,

she positively identified the appellant as her second robber.

Though we acknowledge the vagaries of human memory and the inherent suggestibility of many identification procedures, we agree with the trial court's findings in this cause that the complaining witness' in court identification of the appellant as her robber rested on an independent recollection of her encounter with the appellant, and that her in court identification of appellant was not influenced by any pre-trial identifications of appellant that she made. E.g., *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

The complaining witness had a good opportunity to view her robber; the appellant's physical and facial descriptions and the description of the robber the complaining witness gave the police "matched perfectly." Furthermore, all of the factors in this case, in particular, appellant's written confession, the amount of time that elapsed prior to his arrest, and the subsequent corporeal line-up held within a relatively short period of time after appellant's arrest, can lead to only one conclusion—the robbery to which appellant admitted he committed is the identical robbery for which appellant was convicted. E.g., *Thompson v. State*, 480 S.W.2d 624 (Tex.Cr.App.1972).

■ We, therefore, find that the testimony presented in the trial court shows, in addition to appellant's confession, that the complaining witness' identification of appellant at trial as her robber-rapist was of an independent origin, and was admissible. E.g., *Turner v. State*, 614 S.W.2d 144 (Tex.Cr.App.1981); *Thompson v. State, supra*. Appellant's ground of error is overruled. However, in passing, we do find that the showing of the appellant's photograph by the prosecuting attorney to the complaining witness immediately prior to trial is not to be commended. Notwithstanding, if this was error, in light of all of the evidence presented, we find it to be harmless error beyond any reasonable doubt. See also, *Thomas v. State*, 605 S.W.2d 290 (Tex.Cr. App.1980); *Komurke v. State*, 562 S.W.2d 230 (Tex.Cr.App.1978).

■ Appellant asserts in his second ground of error that the trial court erred in not admitting into evidence his sworn application or motion for probation. Appellant offered this document in evidence to prove the assertion therein that he had never before been convicted of a felony prior to this conviction. Appellant argues that the document was admissible under both the Texas Business Records Act, Art. 3737e, V.A.T.S., and the Texas Official Records Act, Art. 3731a, V.A.T.S.

We find it unnecessary to address appellant's contention because the jury assessed his punishment at more than 10 years' imprisonment, i.e., 20 years. Thus, the question of appellant's eligibility for probation was rendered moot by the number of years the jury assessed as his punishment. The assessment of punishment in a number of years in excess of 10 prevented the consideration of probation by the jury, or even subsequently by the trial court. E.g., *Brown v. State*, 475 S.W.2d 938, 957 (1972); *Chudleigh v. State*, 540 S.W.2d 314, 319 (Tex.Cr.App.1976). See also Art. 42.12, Sec. 3a, V.A.C.C.P.

Appellant's third ground of error contends that the State's witnesses who testified at the punishment stage of his trial were not competent to testify to the general reputation that the appellant had for the character traits of being a peaceable and law-abiding citizen in the community in which he resided.[1] Appellant basically contends that the witnesses' testimony was

---

1. It appears that the word "competent" is a misnomer in this context, for a witness' competency, see Art. 38.06, V.A.C.C.P., has to do with the question whether or not the witness possesses sufficient intellect to relate transactions with respect to which the witness is interrogated, or to understand the obligation of an oath. However, a witness may be deemed competent (mentally sufficient) to testify, but may not be qualified to testify with respect to that about which the witness is questioned. (Subject matter). See Art. 38.10, V.A.C.C.P. For purposes of our discussion, we have used the term "competency" to mean the same as "qualified," but will hereinafter use the word "qualified."

based on specific acts of misconduct committed by appellant.

In this cause, each of the State's witnesses who testified at the punishment stage of appellant's trial was either a victim of other robberies, which appellant was accused of committing, or was a peace officer who had investigated one or more of those robberies. On voir dire examination by defense counsel, outside the presence of the jury, witness Prock testified that she had discussed appellant's reputation with store managers and store personnel of places appellant had entered. Witness Casey testified that he had talked to several police officers and had heard from a couple of private citizens about appellant's reputation, and "about some of the things he was supposed to have been involved in." Witness Collins stated he had been told by the parents of one of appellant's ex-girlfriends that appellant had a bad reputation, and Collins had also talked with another woman and a retired officer living in appellant's neighborhood about appellant. Witness Bockel testified that he had talked to a Seven-Eleven supervisor and two detectives about appellant, in particular about how appellant had committed several robberies. Witness Fletcher testified that he had only talked to one other officer at the scene of this robbery, and to the complaining witness here, concerning appellant. No voir dire of witness Thornton was conducted. All of these witnesses testified that appellant's general reputation-character traits of peaceful and law-abiding were bad.

■ A witness' testimony that the general reputation of a defendant is bad for having a particular character trait in the community in which he lives must be based on discussions with others concerning the defendant, *Johnson v. State*, 614 S.W.2d 148 (Tex.Cr.App.1981); *Mitchell v. State*, 524 S.W.2d 510 (Tex.Cr.App.1975), or on hearing others discuss the defendant's reputation, *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979), and not just on personal knowledge, *Beecham v. State*, 580 S.W.2d 588 (Tex.Cr.App.1979).[2] The discussions must have been more extensive than just with people in the prosecutor's office, *Wright v. State*, 609 S.W.2d 801 (Tex.Cr.App.1980), but discussions just with other peace officers in the defendant's community are sufficient to qualify a witness on reputation. See *Martin v. State*, 449 S.W.2d 257 (Tex.Cr.App.1970); *Sanchez v. State*, 398 S.W.2d 117 (Tex.Cr.App.1965). Additionally, the reputation opinion must be based on facts or rumors other than the actions for which the defendant is being tried. *Watson v. State*, 605 S.W.2d 877 (Tex.Cr.App.1980); *Stephens v. State*, 80 S.W.2d 980 (Tex.Cr.App.1935). However, general reputation testimony is admissible even though it is partially based on a discussion of the offense for which the defendant is being tried, if it also is based on a discussion of matters other than the instant offense. *Watson v. State*, supra, also see *Gholson v. State*, 542 S.W.2d 395 (Tex.Cr.App.1976).

■ Witnesses Prock, Casey, and Bockel partially based their testimony on the acts appellant was being tried for, but their testimony was also based on other acts, and each had discussed appellant's general repu-

---

**2.** We put it another way: General reputation testimony that goes to a particular character trait a defendant may have in the general community in which he lives is opinion testimony based on hearsay and need not be based on the witness' awareness of specific acts, or on his personal knowledge of the fact of the defendant's arrest for the alleged offense on trial, if the witness testifies that the reputation-character trait is good. *Shelton v. State*, 494 S.W.2d 851 (Tex.Cr.App.1973); *Frison v. State*, 473 S.W.2d 479 (Tex.Cr.App.1971). If a witness testifies that a defendant has a general reputation for a particular character trait, and testifies that the defendant's general reputation for having that trait is good, it is not necessary that the witness be personally acquainted with the defendant in order to speak of the defendant's general reputation which the witness knows, and the reputation of the defendant need not have been discussed by the witness with anyone prior to the date of the alleged offense. *Frison*, Id. However, before a witness can testify that the defendant's general reputation for having a particular character trait is bad, the witness must have actually discussed the matter with someone, and that person must have told the witness that the defendant's general reputation for having that particular character trait was bad.

tation with others; therefore, their testimony was properly qualified. Witness Collins talked to others about appellant's reputation in general, thereby clearly qualifying his testimony. No challenge was made to the testimony of Thornton, so no error is shown in allowing him to testify.

 Witness Fletcher did not talk to anyone other than persons at the scene of the robbery for which appellant was being tried. He did not indicate clearly whether his conversations about appellant's reputation were based on anything other than appellant's actions in committing that offense, but he also did not state such conversations were based *only* on such actions. Once a general reputation-character witness has indicated that he had discussed with others a defendant's general reputation for having a particular character trait, the burden is then on the defendant to show clearly that those discussions were based solely on the defendant's actions which are the subject of the trial. Otherwise, the witness' general reputation testimony is admissible. See *Watson v. State*, supra.

■ Further, Fletcher was a peace officer in appellant's community. He did not testify to anything other than that he was familiar with appellant's "bad" reputation for the character traits of peaceable and law-abiding, and five other witnesses also testified to appellant's "bad" reputation for those traits, so any error in admitting Fletcher's testimony was harmless. See *Watson v. State*, supra; *Mitchell v. State*, supra; Cf. *Wright v. State*, supra.

Appellant's ground of error is overruled.

In so holding, we note that appellant does not claim on appeal, nor did he contend in the trial court, nor does the evidence show, that any of the State's witnesses were "manufactured" by the prosecuting attorney. If that had been shown, we would not hesitate to reverse appellant's conviction.

Finding no reversible error, the judgment is affirmed.

DALLY, J., concurs in result.