**Jeffery Mantrue MILLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14-92-00049-CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Decided Dec. 10, 1992.

Will Gray, Hattie Sewell Mason, Houston, for appellant.

Karen A. Clark, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

OPINION

ELLIS, Justice.

Appellant, Jeffery Mantrue Miller, appeals his judgment of conviction for the offense of aggravated robbery. TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1992). The jury rejected appellant's not guilty plea

and the court, after finding the one enhancement paragraph of the indictment to be true, assessed punishment at thirty-five (35) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

In September of 1991, Jeff Schroeder worked as a superintendent for Suburban Homes and Lumber. At approximately 9:00 a.m. on September 11, 1991, Jeff arrived at the property located on Mesa Road and Little York. The property was owned by Suburban Homes and Jeff planned to mow along the roadway. He stopped his truck on the side of the road approximately thirty yards from the front gate of the property. Jeff unlocked the gate and then started back to his truck. Suddenly he noticed a black man in the passenger side of his truck. Jeff ran toward his truck, and as he did, he noticed a yellow truck parked approximately thirty feet in front of his truck. As he reached his own truck, the man was exiting the truck holding a stereo headphone set and an umbrella that belonged to Jeff. Jeff asked, "What are you doing in my truck?" The man replied, "This isn't my truck?" Jeff responded that it was not the man's truck.

The man held a knife in his right hand. He told Jeff, "Give me your wallet, or I'll stab your white ass." As Jeff handed the man his wallet, the man, still holding the knife, came within arm distance of Jeff. After he took the wallet, the man backed up a few steps. Jeff backed up and grabbed a tool out of the back of his truck. The tool had a metal blade about five to six inches wide, and about a four foot handle. Jeff took a swing at the man and missed him. The man ran around the back of the trailer away from Jeff's truck. Jeff stayed between the man and his truck until the man yelled to the people in the yellow truck, "Get the gun and shoot him." The man ran toward the yellow truck. Jeff threw the scraper at him, but the man avoided it. The man got into the yellow truck, and the driver headed off down Little York.

Jeff stopped a school bus and told the driver what had happened and asked him to call the police. Three school police officers arrived at the scene. They took the information regarding the instant offense and then contacted the Houston Police Department. At a pretrial lineup and in court, Jeff identified appellant in this case as the man who had robbed him.

In appellant's first point of error, he asserts that the court erred in not suppressing in-court identification because the lineup on which they were based was unnecessarily suggestive and conducive to irreparable mistaken identification. At approximately 9:00 p.m. on the night of the robbery, Detective Whiteley of the Houston Police Department telephoned Jeff Schroeder to tell him they had a few suspects in custody in connection with the robbery. He asked Jeff to come down to the station to view a lineup. At about 11:00 a.m. the next morning, Jeff viewed the lineup. Jeff identified appellant as the man who had robbed him at knifepoint. Appellant now contends that the trial court erred in allowing the in-court identification testimony of Jeff Schroeder. Specifically, appellant contends that Jeff's testimony was irreparably tainted because the lineup from which Jeff chose appellant was unnecessarily suggestive and conducive to irreparable mistaken identification.

■ An in-court identification is always admissible unless it is shown by clear and convincing evidence that it was tainted by improper pretrial identification procedures. *Bethune v. State*, 821 S.W.2d 222, 228 (Tex.App.—Houston [14th Dist.] 1991), *aff'd*, 828 S.W.2d 14 (Tex.Crim.App.1992), citing *Jackson v. State*, 628 S.W.2d 446, 448 (Tex.Crim.App.1982); *Mullen v. State*, 722 S.W.2d 808, 814 (Tex.App.—Houston [14th Dist.] 1987, no pet.). The in-court identification is inadmissible if the pretrial identification procedure is impermissibly suggestive and the suggestive procedure gives rise to a substantial likelihood of irreparable misidentification. *Bethune v. State, supra; Rogers v. State*, 774 S.W.2d 247, 260 (Tex.Crim.App.1989), *cert. denied*, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989).

Appellant contends that the lineup was unnecessarily suggestive for the following reasons: (1) appellant was the only participant in the lineup who appeared in a hospital gown; (2) appellant was the only participant who was not wearing shoes; (3) appellant was the only participant with unkempt hair; and (4) appellant was the only participant with a swollen face.

The lineup consisted of eight males who ranged in age from twenty-two to thirty-one. Their weight ranged from one hundred-fifty pounds to three hundred pounds. The first four men in the lineup were chosen because of their similarities to appellant and were thus smaller men. The last four men were chosen because of their similarities to another larger suspect and were thus larger men. As in *Bethune*, the record in the instant case reveals that the complainant did not even notice several of the differences pointed out by appellant. The complainant testified during the hearing on the motion to suppress the in-court identification and during trial that there was no doubt in his mind that appellant was the man who had robbed him on September 11, 1991. Jeff testified that he was unaware that there had been an auto chase involving appellant and that appellant had been injured and had gone to the hospital. He testified that he did not notice that appellant had been dressed differently than the other men in the lineup, nor did he notice that appellant was wearing a hospital-type shirt. Jeff did not notice that appellant's face was puffy, nor did he notice that appellant was not wearing shoes. Jeff did not notice that appellant's hair was messy but he did not notice whether anyone else in the lineup had messy hair. Moreover, Jeff testified that at the time of the offense, appellant was not wearing a hospital gown and he did not notice if appellant was wearing shoes or had a swollen, puffy face.

Jeff testified that he chose appellant based upon the fact that he had a scraggly beard and that after appellant lost his hat during the instant offense, his hair was messed up and sticking straight up. Because he was able to get a good look at appellant's facial features and build during the instant offense, Jeff knew that appellant was about an inch or two taller than he was and was skinny. Jeff testified that he recognized appellant's face. When appellant walked onto the lineup stage, Jeff knew he was the man who had robbed him. Under these circumstances, as in *Bethune*, this court must conclude that the lineup was not impermissibly suggestive. *Bethune v. State, supra*, at 229.

In assessing reliability under the totality of the circumstances, this court should consider:

> (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the trial confrontation; and (5) the time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

As noted above, Jeff Schroeder positively identified appellant as the man who robbed him at knifepoint. Though Jeff gave the police a description of appellant, the record does not reflect the accuracy of that description. Jeff testified that, from the time that he parked his truck off Mesa Road and the time that appellant drove off in the yellow truck, approximately five to seven minutes elapsed. Of this five to seven minutes, appellant testified he looked straight at appellant's face for a minimum of three minutes. He had from thirty seconds to one minute to look directly at appellant's face when appellant came around Jeff's truck. Jeff had the opportunity to look at appellant's face when appellant stood by Jeff's truck while looking in his wallet. Jeff testified that he stared at and studied appellant's face while appellant spoke to him and he did this for what he considered to be a "long time". Moreover, Jeff noticed appellant's facial features and build during the course of the offense and was able to see appellant's hair when his hat fell off as he fell down. The lineup took place a mere twenty-five to twenty-six hours after appellant committed the instant

offense. During both the hearing on the motion to suppress the lineup and at trial, Jeff stated that he was positive that appellant was the man who had robbed him at knifepoint. He expressed no doubt as to the certainty of his identification of appellant.

We find that appellant has failed to show by clear and convincing evidence that the lineup was impermissibly suggestive or that it led to an irreparable in-court misidentification by Jeff Schroeder. Jeff's in-court identification was reliable and admissible and the trial court did not err in allowing it. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the evidence was insufficient to sustain a conviction for aggravated robbery. Appellant contends that the evidence presented by the State was insufficient to establish that the knife exhibited by appellant was a deadly weapon, and thus insufficient to support appellant's conviction for aggravated robbery.

█ In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of act could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). If there is evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, this court is not in a position to reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim. App.1988).

█ Jeff Schroeder, testified that as appellant stepped out of Jeff's truck, appellant held a knife in his right hand. Appellant said to Jeff, "Give me your wallet or I'll stab your white ass." Jeff handed appellant his wallet. When he did, appellant came within arm distance of Jeff, still holding the knife in his hand. Jeff testified that at that point he was afraid.

The State introduced into evidence a knife that was similar to the one appellant exhibited during commission of the instant offense. There were some small dissimilarities between the knife appellant exhibited and the one the State introduced at trial: the handle on appellant's knife was rounded rather than pointed; the blade on appellant's knife curved more; and appellant's knife as a whole was approximately an inch larger. However, both the length and the width of the two blades were the same size. Both blades had one side which was designed to cut. Officer Antonio Gonzales of the Houston Police Department testified that he had possession of appellant's knife for a short time after appellant was arrested. He testified that the only major differences he noticed between appellant's knife and the knife the State introduced at trial were that the handle on appellant's knife was made of solid wood and the blade was not as polished. He stated that the size of the blades were similar.

Officer F.M. Atkins of the Houston Police Department testified that he was the officer who first recovered appellant's knife. Officer Atkins described the knife as a pocket knife with a single folding blade. The knife was very dirty. He estimated the blade to be four and one-half to five inches in length. Officer Atkins testified that the knife introduced by the State was similar to appellant's knife. The only difference was the handle of appellant's knife was made entirely of wood. Finally, Officer J.B. Whiteley testified for the State. During direct examination, the prosecutor asked Officer Whiteley, based upon the characteristics of the knife introduced at trial, "if an individual possessed a knife that looked like that knife, would that knife be able in the manner of its intended use to cause serious bodily injury or death to a human being?" Officer Whiteley agreed that such a knife could cause serious bodily injury or death.

"Deadly weapon" means: (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended

use is capable of causing death or serious bodily injury. Tex.Penal Code Ann. § 1.07(a)(11). A knife is not a deadly weapon *per se. Thomas v. State,* 821 S.W.2d 616, 620 (Tex.Crim.App.1991). However, some varieties of knives are designed to cause serious bodily injury or death, and therefore could qualify under section 1.07(a)(11)(A). *Id.* Other types of knives are manifestly designed and made for other purposes and thus do not qualify as deadly weapons unless actually used or intended to be used in such a way as to cause death or serious bodily injury within the meaning of section 1.07(a)(11)(B). *Id.* Wounds need not be inflicted before a knife can be determined to be a deadly weapon under subsection (B). *Davidson v. State,* 602 S.W.2d 272, 273 (Tex.Crim.App.1980). If there was no actual injury, the State is required to support the capacity of the knife to cause serious bodily injury or death by factors such as the manner of use, the size of the blade, threats made by the accused, or the physical proximity of the accused and his victim. *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App.1983).

As stated above, when appellant stepped out of the complaining witness' truck, he held a knife in his right hand. Appellant said to Jeff, "Give me your wallet or I'll stab your white ass." Jeff handed appellant his wallet. When he did, appellant came within arm distance of Jeff, still holding the knife in his hand. Jeff testified that he was afraid at that point. The record reflects that the blade of appellant's knife was designed to cut. Officer F.M. Atkins testified that the blade was approximately four and one-half to five inches in length. Finally, Officer J.B. Whiteley testified that such a knife could be used to cause serious bodily injury or death. The State's witness' description of appellant's knife was uncontradicted. The evidence presented by the State was sufficient to convince a rational factfinder beyond a reasonable doubt that the weapon exhibited by appellant during the instant offense was deadly in the manner of its use or intended use.

Appellant claims that the complaining witness was obviously not afraid of what appellant might do with the knife since he voluntarily engaged in a fight with appellant and because appellant was the first of the two to retreat for safety. However, Jeff specifically stated that he was afraid when appellant stepped out of his truck holding a knife, and during the time that appellant asked for and handed over his wallet. It was only after Jeff picked up the scraper tool that he began to feel that he could defend himself. Indeed, the fact that he felt he needed a weapon to defend himself is proof in itself that Jeff was afraid of what appellant might do to him with the knife. Second, appellant has cited to no authority for the proposition that once an aggravated robbery has occurred, if the victim picks up a weapon and the accused retreats to safety, the accused is no longer culpable for the aggravated robbery.

We find that the evidence presented by the State was sufficient to convince a rational factfinder beyond a reasonable doubt that the knife appellant exhibited was a deadly weapon and that appellant was guilty of the offense of aggravated robbery. Appellant's second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.