TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00343-CR






Cornell Loving, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0945017, HONORABLE TOM BLACKWELL, JUDGE PRESIDING






 Appellant Cornell Loving appeals from a conviction for the offense of aggravated
robbery with a deadly weapon. See Tex. Penal Code Ann. § 29.03 (West 1994). Appellant's
punishment was assessed by the trial court at imprisonment for forty years. In his appeal,
appellant asserts the trial court erred in admitting in evidence before the jury a witness's in-court
identification of appellant because that identification was tainted by an impermissibly suggestive
pretrial identification procedure. In addition, appellant contends the trial court erred by
improperly submitting to the jury during its deliberations an "Allen" charge. We will overrule
appellant's points of error and affirm the judgment of the trial court.

 Appellant and three codefendants were charged with the offenses of attempted
capital murder and aggravated robbery. All defendants were tried together before the same jury. 
The allegations of capital murder were abandoned and the jury was charged only on the offenses
of robbery and aggravated robbery. The jury acquitted Christopher Whitman and convicted Andre
Webb, Timothy Scott, and appellant of the offense of aggravated robbery.

 Both Juan Riojas and Jesus Javier Maldonado Ybarra, victims of the robbery,
testified at trial before the jury identifying appellant as one of the robbers. Appellant, in his
written statement, which was admitted in evidence, admitted coming to the scene of the robbery
and fleeing with the codefendants. But according to his written statement, appellant was a mere
bystander while the two codefendants decided to commit and did commit the robbery, which
appellant witnessed and described in his statement. The victim-witness Ybarra testified that
appellant was the robber who hit him. Ybarra's identification of appellant is unchallenged on
appeal.

 Appellant argues that his in-court identification made by the victim-witness Riojas
"was tainted by an impermissibly suggestive pretrial procedure." As a result of this alleged
tainted in-court identification testimony, appellant claims he was denied federal due process and
state due course of law rights. U.S. Const. amend. V, XIV; Tex. Const. art. I, § 19. The
pretrial identification "procedure" that appellant says tainted the in-court identification occurred
when the witness Riojas saw a Xeroxed copy of appellant's photograph in the prosecutor's
notebook. Before trial, the prosecutor told defense counsel that Riojas had seen a Xeroxed copy
of appellant's photograph in her trial notebook. Before Riojas testified in the presence of the jury,
the trial court conducted a hearing out of the presence of the jury. In that hearing, Riojas testified
concerning the "procedure" that appellant alleges tainted Riojas' in-court identification of
appellant. At this hearing, Riojas positively identified appellant as one of the robbers he saw at
the time of the robbery. Riojas also testified that about thirty days before the trial the prosecutor
came to his house to interview him. It was after dark and Riojas was interviewed outside his
house "under a light." Riojas, recalling the interview, testified: "Well, she was flipping, you
know, through her notebook and everything, and that's when I saw, and I told her 'that's him.'" 
Riojas was referring to appellant's Xeroxed photograph in the prosecutor's notebook. Riojas saw
no other photographs before trial. In response to the trial court's questions, Riojas testified he
would have recognized appellant at the trial as one of the robbers even if he had not seen the
photograph in the prosecutor's notebook. At the conclusion of the hearing, the trial court stated:
"It will be the ruling of the court that the statement by the witness that he positively identifies the
Defendant Loving at this time and is not impacted by having inadvertently seen a prior Xeroxed
photograph. I take it then that the objection to his testimony doesn't go to admissibility but really
goes to [its] weight and so [the] motion . . . will be overruled." Trial counsel made no further
objection to the trial court's ruling at that time concerning the court's conclusion that the objection
was not to the admissibility of the testimony.

 Testifying before the jury, Riojas, based on what he saw during the robbery,
positively identified appellant as one of the robbers. On cross-examination there was considerable
testimony concerning the "procedure" in which Riojas observed appellant's photograph in the
prosecutor's notebook. Much of this extensive cross-examination testimony is set out in
appellant's brief; although this testimony is more ambiguous than the testimony in the earlier
hearing, Riojas reaffirmed the testimony elicited at the hearing. Concerning the cross-examination
testimony, appellant argues that "[a]t times, Riojas did indicate that the viewing was unintentional. 
However, the fairest interpretation of Riojas' testimony is that the prosecutor displayed
Appellant's photograph when Riojas asked to see the likenesses of the robbery suspects who were
in custody."

 Defense counsel renewed his objection after Riojas testified before the jury and
requested that the trial court withdraw from the jury's consideration Riojas' in-court identification
testimony. This objection and request the trial court overruled, but told appellant's counsel he
would be allowed to make a bill of exception. For that bill of exception, appellant's counsel
called as witnesses the three attorneys who represented the other defendants. These attorneys
were present when the prosecutor told appellant's attorney about Riojas seeing appellant's
photograph in her notebook. On the bill, one of the attorneys testified concerning the meeting of
defense counsel and the prosecutor. "I believe she stated that her first and only--in her first
meeting with Juan Riojas she had inadvertently revealed a photograph of Cornell Loving as she
was thumbing through her file, and he picked it out and asked to see it." On cross-examination
the attorney testified that he recalled that the prosecutor had told defense attorneys, "I was
thumbing through the notebook, but he stopped her . . . and said, 'That's him.'" The other two
defense attorneys concurred with the first defense attorney's testimony on the bill. After
appellant's counsel presented argument on the bill of exception, the trial court stated that seeing
Loving's photograph, which the court thought was a poor likeness, could not have in any way
materially altered or influenced the witness's in-court identification of appellant.

 Determining the admissibility of a challenged in-court identification requires a two-step analysis. Simmons v. United States, 390 U.S. 377 (1968). First, the photographic display
procedure must be impermissibly suggestive; and second, the impermissibly suggestive procedure
must give rise to a very substantial likelihood of irreparable misidentification. Analysis under
these steps requires an examination of the totality of the circumstances of the particular case under
consideration and a determination of the reliability of the in-court identification. See Niel v.
Biggers, 409 U.S. 188, (1972); Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995);
Cantu v. State, 738 S.W.2d 249, 251 (Tex. Crim. App. 1987). If the totality of the circumstances
reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure,
subsequent identification testimony will be deemed reliable, "reliability [being] the linchpin in
determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98
(1977); Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988); Jackson v. State, 657
S.W.2d 123, 130 (Tex. Crim. App. 1983). A defendant who contends on appeal that a trial court
erred in allowing in-court identification of him by a complaining witness carries a difficult and
heavy burden. Unless the defendant shows by clear and convincing evidence that the complaining
witness' in-court identification of a defendant as an assailant was tainted by improper pretrial
identification procedures, the in-court identification is always admissible. Jackson v. State, 628
S.W.2d 446, 448 (Tex. Crim. App. 1982); Johnson v. State, 891 S.W.2d 284, 286-87 (Tex.
App.--San Antonio 1994, no pet.).

 In this case, the trial court found Riojas positively identified appellant and that the
witness's in-court identification was "not impacted by [his] having inadvertently seen a prior
Xerox photograph" of appellant. See Jackson, 628 S.W.2d at 448-49 (prosecutor immediately
prior to trial showed witness defendant's photograph--judgment affirmed). We conclude, that
based on the totality of the circumstances, it has not been clearly and convincingly shown that
Riojas' inadvertent viewing of appellant's Xeroxed photograph was impermissibly suggestive. 
See Barley, 906 S.W.2d at 33-34. Even if it could be successfully argued that the viewing of the
photograph was impermissibly suggestive, the totality of the circumstances do not show clearly
and convincingly a substantial likelihood of irreparable misidentification. Id. at 34-35. The
witnesses Riojas and Ybarra were victims and not casual observers. See Cantu v. State, 738
S.W.2d 249 (Tex. Crim. App. 1987). Riojas' description of appellant soon after the robbery was
not entirely accurate, but Ybarra's description of appellant to the officers was quite accurate. 
Neither witness identified appellant in photographic identification exhibits after the robbery. 
However, although the light conditions were not good, the witnesses had several minutes, perhaps
thirty, prior to and during the robbery to view the robbers, and the witnesses were certain of their
identification of appellant at trial. Appellant's first point of error is overruled.

 Independent of his federal due process point of error concerning his in-court
identification, appellant presents a separate point of error asserting a violation of his state due
course of law rights. The state due course of law point, which was preserved for review in the
trial court, must be addressed. Elliott v. State, 858 S.W.2d 478, 487 (Tex. Crim. App. 1993);
and see Heitmann v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991). Appellant argues:


Riojas testified that he asked to see photos of the jailed suspects, thinking that if
he identified one of them, he could implicate all of them--in his own words, 'take
the other guys down.' RX66. There was a possibility that Riojas has seen
appellant at some time prior to or subsequent to the offense--a viewing that could
have triggered an association in Riojas' mind of appellant with the offense. These
factors lead to the conclusion that Riojas' in-court identification was too unreliable
to admit in evidence against appellant.



Appellant concludes: "The pretrial procedure used by the prosecutor clearly was improperly
suggestive." Appellant has isolated and relied on testimony in conflict with other testimony which
the trial court could have considered in determining that the in-court identification testimony of
Riojas was reliable and admissible.

 Resolving conflicts in predicate facts to determine whether evidence is admissible
is a function of the trial court. Tex. R. Crim. Evid. 104; McVickers v. State, 874 S.W.2d 662,
664 (Tex. Crim. App. 1993); Casillas v. State, 733 S.W.2d 158, 168 (Tex. Crim. App. 1986);
Burleson v. State, 802 S.W.2d 429, 440 (Tex. App.--Fort Worth 1991, pet. ref'd). The trial court
found that the witness's inadvertent viewing of appellant's Xeroxed photograph was not so
impermissibly suggestive as to render unreliable the in-court identification of appellant. 
Considering the totality of the circumstances, we agree. We conclude that the trial court correctly
ruled the in-court identification of appellant was reliable. Therefore, it follows, appellant was not
deprived of his state due course of law rights. Appellant's second point of error is overruled.

 In his third point of error, appellant complains that: "The trial court erred in giving
an "Allen" (1) or "Dynamite" charge to the jury, when the jury had not requested any additional
instructions pursuant to Art. 36.16, V.A.C.C.P." Appellant's trial objections did not mention
nor in any way implicate article 36.16. (2) The objections did not alert the trial court that appellant
would thereafter on appeal challenge the giving of the Allen charge as a violation of article 36.16. 
Only the trial objections made by appellant are preserved for our review.

 At trial, appellant's counsel adopted a codefendant's objection that the giving of
the Allen charge was "premature and coercive." It is clear the "premature" objection to the Allen
charge was made because the jury had deliberated for less than five hours and had not indicated
it was in disagreement or deadlocked in reaching a verdict. The jury had returned to court
requesting that certain testimony be read by the court reporter. The trial court correctly complied
with the jury's request but on its own initiative the court submitted a "standard" Allen charge to
which the objections were made. See 8 McCormick, Blackwell and Blackwell, Criminal Forms
and Trial Manual, § 96.31 (Texas Practice 10th ed. 1995).

 Our attention has not been directed to any case, and we have found only one
instance in this state in which the Allen charge was given before the jury indicated to the trial
court it was unable to reach a verdict. In Love v. State, 909 S.W.2d 930, 936 (Tex. App.--El Paso
1995, pet. ref'd), the trial court followed a practice quite preferred in some states and federal
jurisdictions of including within the original instructions an Allen charge which is submitted to
the jury before its deliberations commence. Many courts believe an Allen charge is less coercive
if submitted before a jury comes to an impasse in reaching a verdict and thus have expressed a
preference for the trial court to give the charge before a jury deadlocks. See e.g., United States
v. Warfield, 97 F.3d 1014, 1022 (8th Cir. 1996); United States v. Smith, 635 F.2d 716, 720 n.7
(8th Cir. 1980); United States v. Rodriguez-Mejia, 20 F.3d 1090 (10th Cir. 1994); United States
v. Smith, 857 F.2d 682, 684 (10th Cir. 1988); United States v. Dyba, 554 F.2d 417, 420-21 (10th
Cir. 1977); United States v. Martin, 756 F.2d 323, 324-25 (4th Cir. 1985); United States v.
Willis, 88 F.3d 704, 716-17 (9th Cir. 1996); United States v. Williams, 624 F.2d 75, 76 (9th Cir.
1980). The courts of several states have held that the decision to give an Allen charge does not
require a finding that the jury is deadlocked. E.g,. Stewart v. State, 436 S.E.2d 679 (Ga. App.
1993); State v. Wooten, 631 A.2d 271 (Conn. 1993); State v. Brown, 853 P.2d 851, 861 (Utah
1992). The Commentary of the American Bar Association Standards Relating to Trial by Jury,
Standard 15-4.4 (2d ed. 1987), states the instruction commonly referred to as the "Allen charge"
or "dynamite charge" should not be given to a jury unable to agree after some deliberation. 
Instead of the Allen charge, the ABA Standards recommend that it is most appropriate for a court
to instruct the jury initially as to the nature of its duties in the course of deliberations as set out
in Standard 15 - 4.4.

 We conclude that the trial court did not err in giving the Allen charge before the
jury indicated it was unable to reach a verdict and deadlocked. Cf. Love v. State, 909 S.W.2d
930 (Tex. App.--El Paso 1995, pet. ref'd); Jackson v. State, 753 S.W.2d 706 (Tex. App.--San
Antonio 1988, pet. ref'd). Appellant's third point of error is overruled.

 In point of error four, appellant asserts the coercive nature of the Allen charge
submitted to the jury deprived him of federal due process. Appellant acknowledges the trial court 
gave a traditional Allen charge, which exhorts the jurors in the minority to "consider whether they
are basing their opinion on speculation or surmise and not on the evidence in the case, keeping
in mind the impression the evidence has made on a majority of the jurors of equal honesty and
intellect as the minority." Almost one hundred years after Allen was decided, the Supreme Court
stated that "the continuing validity of this Court's observations in Allen are beyond dispute . . ." 
Lowenfield v. Phelps, 484 U.S. 231, 237 (1988).

 Numerous judicial decisions have been critical of the Allen charge. E.g., United
States v. Brown, 411 F.2d 930, 933-34 (7th Cir. 1969); United States v. Fioravanti, 412 F.2d 407
(3rd Cir. 1969); United States v. Thomas, 449 F.2d 1177 (D.C. Cir. 1971); Green v. United
States, 309 F.2d 852, 854 (5th Cir. 1962); Huffman v. United States, 297 F.2d 754, 759 (5th Cir.
1962) (Brown J., dissenting); State v. Thomas, 342 P.2d 197 (Ariz. 1959); State v. Randall, 353
P.2d 1054 (Mont. 1960). However, "no court has held that the Allen instruction itself is
unconstitutional." Commentary, ABA Standards Relating to Trial by Jury, Standard 15 - 4.4 (b)
(2d ed. 1987). The submission of an Allen charge to the jury does not violate federal due process. 
See Allen v. United States 164 U.S. 492 (1896); Lowenfield v. Phelps, 484 U.S. 231 (1987); Boyd
v. Scott, 45 F.3d 876, 883 (5th Cir. 1994). Appellant's fourth point of error is overruled.

 In his fifth point of error, appellant insists the trial court erred in giving the Allen
charge because it unduly coerced minority members of the jury into agreeing with majority
members, thus denying appellant his state constitutional due course of law rights. Appellant
argues that even if this Court does not find that the Allen charge given violates due process of law,
it should, nevertheless, find that it violates his state constitutional right to due course of law. 
Again urging the coercive language in this charge has been condemned by courts and
commentators. When the trial court submitted the Allen charge, there was no indication the jury
was in disagreement and unable to reach a verdict. Indeed, in his first and second points of error,
appellant complains the instruction was given prematurely--before the jury was deadlocked. 
Therefore the jury was not divided on reaching a verdict at the time and there were no minority
and majority jurors. The Allen charge given may be one that would be condemned by some courts
and commentators, but we hold it did not violate appellant's state constitutional right to due course
of law. Appellant's fifth point of error is overruled.

 The judgment of the trial court is affirmed.



 
 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices B. A. Smith, and Dally*

Affirmed

Filed: May 22, 1997

Publish











* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
 See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. "Allen" refers to Allen v. United States, 164 U.S. 492 (1896), in which the Supreme Court
approved a jury instruction submitted by a trial judge "when the jury returned to the court, apparently
for further instructions." Id. at 501. The Supreme Court did not set out the exact wording of the
charge, but stated its substance and noted that: "These instructions were taken literally from a charge
in a criminal case which was approved by the Supreme Court of Massachusetts in Com. v. Tuey, 8
Cush. 1 and by the Supreme Court of Connecticut in Smith v. State, 49 Conn. 376, 386."
2. Texas Code of Criminal Procedure article 36.16, in part provides:


 . . . After the argument begins, no further charge shall be given to the jury unless
required by the improper argument of counsel or the request of the jury, or unless the
judge shall, in his discretion permit the introduction of other testimony, and in the
event of such further charge, the defendant or his counsel shall have the right to present
objections in the same manner as prescribed in Article 36.15 . . .


This part of the statute is unclear and ambiguous. E.g., the State argues that this provision gives the
trial court discretion to give an Allen charge without the jury's request, while the appellant argues
it is necessary for the jury to request an Allen charge before it should be given. Appellant cites
Jackson v. State, 752 S.W.2d 706, 711-12 (Tex. App.--San Antonio 1988, pet. ref'd). We do not
necessarily agree with all of the reasoning of that case, and note that the Court of Criminal Appeals,
without regard for article 36.16, has long approved the submission of Allen charges.



Jury, Standard 15 - 4.4 (b)
(2d ed. 1987). The submission of an Allen charge to the jury does not violate federal due process. 
See Allen v. United States 164 U.S. 492 (1896); Lowenfield v. Phelps, 484 U.S. 231 (1987); Boyd
v. Scott, 45 F.3d 876, 883 (5th Cir. 1994). Appellant's fourth point of error is overruled.

 In his fifth point of error, appellant insists the trial court erred in giving the Allen
charge because it unduly coerced minority members of the jury into agreeing with majority
members, thus denying appellant his state constitutional due course of law rights. Appellant
argues that even if this Court does not find that the Allen charge given violates due process of law,
it should, nevertheless, find that it violates his state constitutional right to due course of law. 
Again urging the coercive language in this charge has been condemned by courts and
commentators. When the trial court submitted the Allen charge, there was no indication the jury
was in disagreement and unable to reach a verdict. Indeed, in his first and second points of error,
appellant complains the instruction was given prematurely--before the jury was deadlocked. 
Therefore the jury was not divided on reaching a verdict at the time and there were no minority
and majority jurors. The Allen charge given may be one that would be condemned by some courts
and commentators, but we hold it did not violate appellant's state constitutional right to due course
of law. Appellant's fifth point of error is overruled.

 The judgment of the trial court is affirmed.



 
 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices B. A. Smith, and Dally*

Affirmed

Filed: May 22, 1997

Publish











* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
 See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. "Allen" refers to Allen v. United States, 164 U.S. 492 (1896), in which the Supreme Court
approved a jury instruction submitted by a trial judge "when the jury returned to the court, apparently
for further instructions." Id. at 501. The Supreme Court did not set out the exact wording of the
charge, but stated its substance and noted that: "These instructions were taken literally from a charge
in a criminal case which was approved by the Supreme Court of Massachusetts in Com. v. Tuey, 8
Cush. 1 and by the Supreme Court of Connecticut in Smith v. State, 49 Conn. 376, 386."
2. Texas Code of Criminal Procedure article 36.16, in part provides:


 . . . After the arg