Affirmed and Memorandum Opinion filed August 16, 2005









Affirmed and Memorandum Opinion filed August 16, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01181-CR

____________

 

LEVELLE WATSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 339th
District Court

Harris County, Texas

Trial Court Cause No. 941,620

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Levelle Watson, was convicted
by a jury of aggravated robbery enhanced with a prior conviction for aggravated
robbery.  See Tex. Pen. Code Ann. ' 29.03 (Vernon
2003).  The court sentenced appellant to
35 years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In his sole point of error on appeal,
appellant contends the trial court erred by permitting an in-court
identification that was allegedly tainted by an overly suggestive out-of-court
identification procedure.  We affirm.








On March 6, 2003, at approximately 8:00
p.m., two men entered a AFood and More@ gas station where
Daanish Jamil, the complainant, was working for his father.  One of the men immediately walked behind the
counter, pulled out a pistol, and ordered Jamil to open the cash register.  The two men further demanded that Jamil
relinquish his watch, his wallet, and additional cash that was located in two
cash boxes beneath the register.  After
Jamil complied with each of these demands, the two men forced him into the
store=s freezer and fled
the scene.

Because the freezer lock was not properly
affixed, Jamil was able to free himself within a few minutes and subsequently
called the Pasadena Police Department. 
Once officers arrived at the scene, Jamil provided an account of the
robbery and described his assailants as two black males in their late 20's or
early 30's.  He explained that one of the
men wore a hood or cap, had on dark clothingCeither a dark blue
or black jacketCand brandished a large, dull or dark
silver, revolver type gun.  Jamil
described the other man as Avery tall@ with a Apretty good build@ and Apretty big nose
and slender face,@ and explained that the man wore a light
blue or gray jacket.  Finally, Jamil
detailed the property and money that were stolen, and specifically explained
that the gas station kept $5 bills in stacks of ten bound by black rubber
bands.

Shortly thereafter, another Pasadena
police officer was approximately one mile from the Food and More gas station
when he observed two men matching the robbery suspects=
descriptions.  When the officer
approached the men, they ran.  During the
pursuit, one of the men shed his Abluish green@ jacket and the
other man discarded a black toboggan hat. 
After the men were captured, officers found a black semiautomatic pistol
located about five feet from the discarded jacket and also retrieved property
matching the stolen property=s
description.  In addition, the two men
were found carrying two stacks of $5 billsCten bills in each
stackCwrapped with black
rubber bands.








Less than an hour after the robbery, each
perpetrator was returned to the scene individually for Jamil to identify.  Officers informed Jamil that the two men
might or might not be the robbers.  At no
time did officers indicate that the men were captured with the stolen property
and cash.  However, Jamil immediately
identified both men as the robbers and also recognized that one of the men was
wearing different clothing than when the robbery occurred.[1]  Jamil further explained that he recognized
the men=s faces and stated
that he was 100 percent certain that they were the assailants.

To further verify that they had captured
the correct suspects, the police requested that Pasadena Police Department
Crime Scene Investigators take cast moldings of two footprints found outside
the Food and More gas station. 
Investigators compared the footprint-moldings with the shoes worn by
appellant and his accomplice during the robbery and determined that they
matched.

Prior to trial, appellant filed a motion
to suppress Jamil=s out-of-court identification.  The trial court held a suppression hearing on
the issue but determined that the identification was not overly
suggestive.  Therefore, the court allowed
evidence about the out-of-court identification and permitted Jamil to make an
in-court identification of appellant as one of the assailants.

In his sole point of error, appellant
argues that the trial court committed reversible error by permitting the
in-court identification.  Specifically,
appellant argues the out-of-court identification was likely a misidentification
because Jamil: (1) only viewed the assailants for three or four minutes; (2)
incorrectly described the robbers= clothing; (3) was
mistaken about appellant=s height and weight; and (4) misidentified
the type and color of the gun used during the offense.  Based on these factors, appellant suggests
the out-of-court identification was incorrect and Atainted,@ and therefore,
the in-court identification should not have been permitted.








An appellant who complains of an in-court identification
bears a difficult and heavy burden.  Loving
v. State, 947 S.W.2d 615, 617 (Tex. App.CAustin 1997, no pet.).  An appellant must show by clear and
convincing evidence that the in-court identification was tainted by improper
pretrial identification procedures that likely led to a misidentification.  Jackson v. State, 628 S.W.2d 446, 448
(Tex. Crim. App. 1982).  Absent such
strong proof, an in-court identification is always admissible.  Id. 

In evaluating the admissibility of an in-court
identification, a court is required to engage in a two-step analysis.  Conner v. State, 67 S.W.3d 192,
200 (Tex. Crim. App. 2001); Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998).  First, the court is to determine whether the out-of-court
identification procedure was impermissibly suggestive.  Conner, 67 S.W.3d at 200; Loserth, 963 S.W.2d at 772.  Second, the court must decide whether the
suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification.  Conner, 67
S.W.3d at 200; Loserth, 963 S.W.2d at 772.  An analysis under this two-part test is
conducted by using a Atotality of the circumstances@ approach.  Barley v. State, 906 S.W.2d 27, 33
(Tex. Crim. App. 1995).  Therefore, we must first consider whether the
procedure utilized to obtain an identification of appellant was overly
suggestive.








Here, appellant was apprehended within one mile of the
robbery scene and returned to the gas station for an Aon-the-scene@ identification.  As soon as Jamil saw appellant sitting in the
patrol car, he identified appellant as one of the two attackers.  Undoubtedly, there is a certain amount of
suggestiveness in having a suspect identified in the back of a police car.  However, the Texas Court of Criminal Appeals
has held that the use of such a procedure may be permissible and even necessary
in some situations.  Garza v. State,
633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (citing Stovall v. Denno, 388
U.S. 293, 302 (1967)).[2]  Furthermore, here the police did not claim to
have captured the perpetrators and, in fact, told Jamil that the men in custody
might or might not be the hijackers.  The
police also refrained from informing Jamil that the men were captured with
property and cash stolen during the robbery. 
Therefore, the police took precautions to ensure any suggestiveness in
the identification was minimized.  As
such, we conclude that the out-of-court identification procedure utilized in
this case was suggestive, but not impermissibly suggestive.

Assuming arguendo that the procedure in this case was
impermissibly suggestive, we next must determine whether this created a very
substantial likelihood of irreparable misidentification.  See Conner, 67 S.W.3d at 200; Loserth, 963 S.W.2d at 772.  The factors to be considered in evaluating
the likelihood of misidentification due to a suggestive pretrial procedure
include:  (1) the witness= opportunity to view the criminal
during the commission of the crime;  (2)
the witness= degree of attention;  (3) the accuracy of the witness= prior description of the
criminal;  (4) the level of certainty
demonstrated by the witness at the confrontation;  and (5) the length of time between the
confrontation and the crime.  Manson
v. Braithwaite, 432 U.S. 98, 114 (1977); 
Jackson v. State, 808 S.W.2d 570, 572 (Tex. App.CHouston [14th Dist.] 1991,
pet. ref=d). 
AAgainst these factors is to be
weighed the corrupting effect of the suggestive identification itself.@ 
Manson, 432 U.S. at 114. 
However, the critical, overriding factor is the reliability of the
identification.  Benitez v. State,
5 S.W.3d 915, 921 (Tex. App.CAmarillo 1999, pet. ref=d). 
If the totality of the circumstances reveal no substantial likelihood of
misidentification, the identification testimony will be deemed  Areliable@ and will be admissible regardless of
the suggestive pretrial procedure.  Cooks
v. State, 844 S.W.2d 697, 731 (Tex. Crim. App. 1992); Webb v. State,
760 S.W.2d 263, 269 (Tex. Crim. App. 1988).








 After considering the
above five factors, we conclude the pretrial identification procedure, if
impermissibly suggestive, did not give rise to a very substantial likelihood of
irreparable misidentification.  First,
Jamil had a significant opportunity to view appellant at the time of the
robbery.  While appellant=s accomplice stood primarily behind
Jamil, appellant himself was directly in front of JamilCa mere two to three feet awayCfor approximately three minutes.  Appellant also leaned over the counter to
grab money from the register and looked at Jamil eye-to-eye to ask for his
watch and wallet.  Nothing obscured Jamil=s view of appellant, such as a mask
or poor lighting.

Second, Jamil demonstrated that he was very attentive by
recounting exact details of the incident to police.  This included a detailed description of the
robber=s clothing and appearance and
specifics about the verbal exchanges that occurred during the robbery.

Third, Jamil described appellant with a fair degree of
accuracy.  He explained to police that
appellant was in his late 20's or early 30's, about 6'2" with a Apretty good build,@ and a Apretty big nose and slender face.@ 
Appellant was 37 years old at the time of the offense and stands about
6'1" tall.  At trial, the arresting
officers commented that appellant had a substantial physique and could be a Alinebacker@ playing football somewhere.  Moreover, the jury had an opportunity to
scrutinize Jamil=s physical description of appellant and compare it with
appellant=s actual physical appearance.  In addition, Jamil told officers at the scene
that one of his assailants wore a blue or baby blue jacket and Adirty white shoes.@ 
In fact, appellant was seen discarding a Abluish green@ jacket and was captured wearing
white shoes.

Fourth, Jamil identified both appellant and his accomplice
immediately upon seeing them  in the
patrol car and explained that he was 100 percent certain they were the robbers.

Fifth, less than an hour elapsed between the robbery and the Aon-the-scene@ confrontation.  This presents the exact scenario the Court of
Criminal Appeals envisioned when it discussed permitting Aon-the-scene@ confrontations because of the Afreshness@ of the witness= recollection.  See Garza, 633 S.W.2d at
512.  








Considering the totality of the circumstances, including the
above listed factors, the additional footprint evidence, and the fact that
appellant and his accomplice were apprehended with the stolen property and
cash, we cannot say there was a very substantial likelihood of
misidentification.  As such, we hold that
the trial court did not err in permitting the in-court identification and
overrule appellant=s sole point of error.

The judgment of the trial court is affirmed.

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 16, 2005.

Panel consists of
Justices Yates, Anderson, and Hudson.

Do Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The clothing
discrepancy was due to appellant=s
removing and discarding his bluish-green jacket.  Thus, at the time of Jamil=s identification, appellant was  wearing a white t-shirt.  Despite this discrepancy, Jamil testified
that he instantly recognized appellant by his facial features and was certain
of his identification.





[2]  The court
specifically recognized numerous reasons for allowing such Aon-the-scene@
identifications.  For example, they
provide quick confirmation or denial of identification, which expedites the
release of innocent suspects and prevents further unnecessary detention.  Id. 
They also afford police an opportunity to continue their search for
the actual perpetrator.  Id.  Furthermore, the court noted that Aon-the-scene@
confrontations allow witnesses to test their recollection while their memory is
still fresh and accurate.  Id.  Finally, the court explained that any
possible prejudice resulting from such a confrontation can be exposed through a
rigorous cross-examination of the witness. 
Id.