Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JOSEPH LINO BARELA,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-02-00492-CR

Appeal from the

384th District Court

of El Paso County, Texas

(TC#20000D04679)




MEMORANDUM OPINION
           A jury convicted Joseph Lino Barela of two counts of aggravated robbery and
sentenced him to forty years in prison. Barela appeals, raising nine issues. We affirm.
Summary of the Facts
           On July 9, 2000, Josie Gonzalez and Sergio Espinoza parked their car off of Scenic
Drive in El Paso. As they were standing next to the car, two men approached them and
demanded money and the keys to the car. One of the men shot Espinoza once and
Gonzalez five times. Barela was identified as the shooter and Ruben Perez was identified
as his companion.
 

           A third participant in the crime was Yvette Talamantes. During the punishment
phase of trial, she testified that she drove Barela and Perez to various locations in El Paso
so they could rob people. She described at least five offenses that they were involved in
that night, in addition to the aggravated robbery of Espinoza and Gonzalez. The victims
of the offenses testified as well. The first four offenses involved Barela pointing a gun at
a victim to get money or a car. In one of these offenses, he shot a person in the stomach;
in another, he shot a hole into the spoiler of a car as the occupants of the car tried to get
away from him. In the final offense, he and Perez stole money and a car from a group of
people just after committing the aggravated robbery of Espinoza and Gonzalez.
           The State also presented evidence during the punishment phase that Barela had
robbed and shot two people at a hotel in Kingman, Arizona; had pleaded guilty to
attempted second-degree murder arising from that incident; and had escaped from an
Arizona jail before coming to El Paso.
           Finally, the jury heard evidence regarding the injuries of Espinoza and Gonzalez. 
Espinoza was shot in the face, causing his mandible to shatter into seven or eight large
pieces and multiple small fragments. He required eight bone plates and twenty-eight
screws to repair the damage. After surgery, his jaw was wired shut for four or five weeks. 
 Gonzalez was shot in each leg, her chest, her back, and her abdomen. She suffered a
collapsed lung and was left with large scars on her body.
 

Cumulation of Sentences
           In his first issue, Barela argues that the trial court abused its discretion by stacking
his sentences in this case onto his sentence in the Arizona case. He contends that stacking
was not statutorily authorized because he was not sentenced in Arizona before he was
sentenced in this case.
Background
           Barela was indicted in Arizona for one count of armed robbery, two counts of
aggravated assault, and two counts of attempted first-degree murder. He and his attorney
signed a Stipulated Guilty Plea, in which Barela agreed that he would plead guilty to two
counts of attempted second-degree murder (lesser-included offenses of the two counts of
attempted first-degree murder) in exchange for the dismissal of the remaining charges. 
The agreement provided that Barela could receive up to thirty-one years in prison and that
he would not have any right to appeal from the judgment or sentence. Barela
subsequently appeared at a change-of-plea hearing. Finding that Barela’s pleas were
knowing and voluntary, the trial court entered a “Change of Plea” order in which it
accepted the pleas and entered them of record. The court also set the matter for entry of
judgment and sentencing on a later date. Barela failed to appear at the time set for
judgment and sentencing, and the trial court issued a bench warrant for his arrest.
           At a February 2002 motions hearing in this case, Barela’s counsel announced that
he was filing a motion to withdraw Barela’s pleas in Arizona and that, in this case, he was
filing an application for probation, in which Barela stated that he had never been
convicted of a felony in any state. In March 2002, the Arizona trial court denied the
motion to withdraw the pleas, subject to the motion being renewed upon Barela’s return
to Arizona. On September 25, 2002--two days before the commencement of voir dire in
this case and well over two years after the Arizona court accepted his guilty pleas--Barela
filed a notice of appeal in the Arizona case.
           The State filed a motion to cumulate Barela’s sentences in this case and the
Arizona case so that the sentence in this case would not commence running until after
Barela has completed his Arizona sentence. At the conclusion of the punishment phase,
the trial court sentenced Barela to forty years in prison pursuant to the jury’s verdict. In
sentencing Barela, the trial court made the following comments:
Mr. Barela, had you not avoided Arizona and its laws, you wouldn’t
be here. Had you not [sic] faced the music in Arizona, you wouldn’t be
here. And you would not be in the circumstances that you have imposed
upon this community, the horror of July 8th and 9th, the fear that you’ve
instilled in people and the lives you have forever destroyed by your actions.

. . .
 
As much power as this Court has the authority to do so, as I do not
know that I do--and I know [defense counsel] . . . will do a fine job in
pursuing your appellate remedies. Your sentence here to date will run
consecutive to whatever sentence is imposed upon you in Arizona.

The court later signed an Order Cumulating Judgment and Sentence with Prior
Conviction. The order sets out the date and nature of the Arizona conviction, the name of
the trial court, and the cause number. It further states that the sentence in the Arizona
case is not less than seven years nor more than thirty-one years. Finally, the order states
that “the sentence imposed herein shall begin when the judgment and sentence in the
preceding Arizona conviction has ceased to operate.”



Discussion
           Article 42.08 of the Texas Code of Criminal Procedure authorizes a trial court to
order cumulative sentences as follows:
When the same defendant has been convicted in two or more cases . .
. in the discretion of the court, the judgment in the second and subsequent
convictions may . . . be that the sentence imposed or suspended shall begin
when the judgment and the sentence imposed or suspended in the preceding
conviction has ceased to operate . . . .

Tex. Code Crim. Proc. Ann. art. 42.08(a) (Vernon Supp. 2004-05). Barela argues this
requires that a sentence be imposed or suspended for the first conviction before a
subsequent sentence may be stacked onto it. The State, on the other hand, argues that it is
the order of conviction, not the order of sentencing, that is important under the statute. 
           The Court of Criminal Appeals examined article 42.08(a) in Pettigrew v. State, 48
S.W.3d 769 (Tex. Crim. App. 2001). Pettigrew was convicted of aggravated sexual
assault in 1995. His ten-year sentence was suspended and he was placed on community
supervision. In 1997, he was convicted of murder. After sentencing him for the murder,
the trial court revoked his community supervision, sentenced him to ten years in prison
for the aggravated sexual assault, and stacked that sentence onto the murder sentence. 
Pettigrew, 48 S.W.3d at 770.
           The court of appeals held that the authority to stack is determined by the order of
the convictions, not the order of the sentences. It further held that article 42.08 authorizes
the stacking of a sentence for a subsequent conviction onto the sentence for a previous
conviction, but does not authorize the stacking of a sentence for a previous conviction
onto a sentence for a subsequent conviction. Id. Therefore, the court of appeals
concluded that the aggravated sexual assault sentence could not be stacked onto the
murder sentence, because the aggravated sexual assault conviction occurred before the
murder conviction. Id. at 771.
           The Court of Criminal Appeals rejected this rigid interpretation of the statute in
favor of a more flexible approach. But the court seemed to agree that the authority to
stack is determined by the order of conviction. Noting that the statute had been the
subject of amendments, the court stated that “the structure of the statutory language as it
relates to the stacking of prison sentences--including its focus on the order of convictions--has remained essentially the same.” Id. at 772 (emphasis added). The court further
stated:
At first glance, some language in the statute might appear to favor
the Court of Appeals’s construction. The statute refers to a “sentence
imposed or suspended.” Given that language, one might conclude that a
“conviction” occurs even when a sentence is suspended, and so the offense
with the probated sentence would necessarily constitute the first
“conviction.” However, there is an alternative interpretation . . . : that, for
the purpose of stacking, a case could be treated as a “conviction” at the time
sentence is suspended or at the time sentence is imposed. In other words,
when community supervision is revoked, the trial court would have the
discretion to treat the case as a conviction at the time of community
supervision and stack a subsequently committed offense onto the revoked
offense, or the trial court could treat the case as a conviction upon
revocation and stack the revocation sentence onto the sentence for the new
offense, if the revocation occurred after the conviction for the new offense.

Id. at 771. The court concluded that its alternative interpretation was the correct one
because the Legislature intended “to give the trial court the maximum flexibility possible
in stacking sentences.” Id. at 773.
           Both parties argue that Pettigrew supports their position. The State emphasizes
that Pettigrew did not reject the idea that it is the order of conviction, rather than the order
of sentencing, that determines the trial court’s authority to stack. But Barela emphasizes
Pettigrew’s holding that a conviction occurs when a sentence is either suspended or
imposed. Because his Arizona sentence had been neither suspended nor imposed, he
argues that the trial court had no authority to stack his sentence in this case onto the
Arizona sentence.
           It is important to note that the issue in Pettigrew was whether, for purposes of
article 42.08(a), a conviction occurs when a sentence is suspended or when it is imposed. 
The court’s holding that a conviction occurs when a sentence is either suspended or
imposed must be understood in this context. The court simply did not address a situation
in which the sentence for the previous conviction was neither suspended nor imposed. 
Therefore, we believe that Pettigrew is relevant to our situation only to the extent that it
indicates that a trial court should have flexibility in stacking sentences and that article
42.08(a) focuses on the order of conviction. The question we must resolve is whether the
Arizona trial court’s acceptance of Barela’s guilty plea constitutes a conviction for
purposes of article 42.08(a), notwithstanding the fact that no formal judgment was
entered and no sentencing occurred.
           The Court of Criminal Appeals has held that the word “conviction” means
different things in different statutes. Ex parte Evans, 964 S.W.2d 643, 647 (Tex. Crim.
App. 1998). Sometimes it means “verdict” and sometimes it means “judgment,” but most
of the time it means “judgment of guilt and the assessment of punishment.” Id. 
Regardless of the context in which it is used, however, the word “conviction” always
involves an adjudication of guilt. McNew v. State, 608 S.W.2d 166, 172 (Tex. Crim. App.
1978); see also Hurley v. State, 130 S.W.3d 501, 505 (Tex. App.--Dallas 2004, no pet. h.)
(holding that a deferred adjudication order was not a conviction for purposes of stacking
sentences because the order did not adjudicate the defendant’s guilt).
           The law in Arizona is different. In that state, a person is convicted when there has
been a determination of guilt by verdict, finding, or acceptance of a plea; sentencing is
not required. State v. Thompson, 27 P.3d 796, 798 (Ariz. 2001). The facts of Thompson
are similar to the facts in this case. Thompson pleaded guilty to two drug offenses, but
absconded before sentencing. A jury subsequently found him guilty of theft, and he was
sentenced in all three cases in a consolidated proceeding. Id. at 797. The State argued
that the drug offenses were prior convictions that could be used to enhance punishment
for the theft offense, and the court agreed. Id. at 797-98. The court held that Thompson
was convicted of the drug offenses when he pleaded guilty. Id. at 798. Therefore, we
conclude Barela was convicted in Arizona when the trial court accepted his guilty pleas.
           As noted above, the Pettigrew Court stated that article 42.08(a) focuses on the
order of conviction and suggested a flexible approach to determining when a conviction
occurs. Pettigrew, 48 S.W.3d at 772. Other courts have likewise held that the statute
speaks in terms of subsequent convictions, not subsequent sentences, and that it is not
necessary for the sentence in the previous conviction to be announced before the
subsequent conviction. See, e.g., Nicholas v. State, 56 S.W.3d 760, 766 (Tex. App.--Houston [14th Dist.] 2001, pet. ref’d); Jason v. State, No. 01-89-01107-CR, 1991 WL
63603, at *4 (Tex. App.--Houston [1st Dist.] April 25, 1991, pet. ref’d) (not designated
for publication).


 We also note that the fact that a preceding conviction has been
appealed does not preclude a subsequent conviction from being stacked onto it. Alsup v.
State, 84 Tex. Crim. 208, 209, 206 S.W. 345, 345-46 (1918); Rivera v. State, 885 S.W.2d
581, 585 (Tex. App.--El Paso 1994, no pet.). The purpose of this rule is to prevent the
defendant from annulling article 42.08(a) by filing an appeal of the preceding conviction. 
Alsup, 84 Tex. Crim. at 209, 206 S.W. at 345-46; Rivera, 885 S.W.2d at 585.
           For these reasons, we conclude that the trial court had the authority to stack
Barela’s sentence in this case onto his sentence in the Arizona case. We reach this
conclusion because the trial court should have flexibility in stacking sentences, article
42.08(a) focuses on the order of conviction, and Barela was convicted in the Arizona case
before he was convicted in this case. See Phillips v. State, 704 S.W.2d 557, 561 (Tex.
App.--Beaumont 1986, pet. ref’d) (applying the law of the jurisdiction where the offense
occurred to determine whether the defendant had a prior felony conviction for purposes of
probation eligibility); Tenery v. State, 680 S.W.2d 629, 640 (Tex. App.--Corpus Christi
1984, pet. ref’d) (same). We also do not believe that Barela should be allowed to annul
the statute by escaping before sentencing and judgment in Arizona. Barela’s first issue is
overruled.
Admissibility of Arizona Court Documents
           In his second issue, Barela argues that his Sixth Amendment right to confront his
accusers was violated when the trial court admitted, during the punishment phase,
certified copies of the Arizona indictment, the Stipulated Guilty Plea, the Change of Plea
order, the order stating that he failed to appear for sentencing and judgment, and the
bench warrant for his arrest for failure to appear.


 He further argues in his fourth issue
that the indictment should not have been admitted because an indictment is not evidence
of guilt and because it contained allegations of offenses for which he was not convicted. 
In his fifth issue, Barela claims that he was denied effective assistance of counsel because
his attorney failed to object to the admission of the Arizona court documents on the
ground that he was not properly identified as the person named in the documents.
           In reviewing a trial court’s ruling on the admissibility of evidence, we must
determine whether the court abused its discretion. Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002). This means that we must uphold the ruling if it is reasonably
supported by the record and is correct under any theory of law applicable to the case. Id.;
Rhodes v. State, 945 S.W.2d 115, 118 n.3 (Tex. Crim. App. 1997). The admission of
improper evidence is harmless when the same or similar evidence is admitted without
objection. Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); Thomas v. State,
621 S.W.2d 158, 164 (Tex. Crim. App. 1981); Nixon v. State, 940 S.W.2d 687, 690 (Tex.
App.--El Paso 1996, pet. ref’d); Jackson v. State, 888 S.W.2d 912, 914 (Tex. App.--Houston [1st Dist.] 1994, no pet.).
           Regarding the order stating that Barela failed to appear for sentencing and
judgment and the bench warrant for his arrest for failure to appear, other unobjected-to
evidence established that Barela absconded. The prosecutor in the Arizona case testified
that he was present at the appointed time for sentencing and judgment, but Barela did not
appear. Barela’s defense witnesses acknowledged on cross-examination that Barela shot
two people at a hotel in Arizona and escaped from jail there. We therefore conclude that
the admission of the order stating that he failed to appear for sentencing and judgment
and the bench warrant for his arrest for failure to appear was harmless.
           Admission of hearsay against a criminal defendant implicates the Confrontation
Clause of the Sixth Amendment. Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 65
L.Ed.2d 597 (1980); Guidry v. State, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999). Until
recently, the admission of hearsay against a defendant was permissible if the hearsay bore
sufficient indicia of reliability. Roberts, 448 U.S. at 66, 100 S.Ct. at 2539; Guidry, 9
S.W.3d at 149. Hearsay was deemed per se reliable if it fell within a firmly rooted
exception to the hearsay rule. White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 116
L.Ed.2d 848 (1992); Guidry, 9 S.W.3d at 149.
           In March of this year, however, the U.S. Supreme Court modified this analysis. 
See Crawford v. Washington, 124 S.Ct. 1354 (2004). Now, different analyses apply to
nontestimonial hearsay and testimonial hearsay. See id. at 1374. The Court held:
Where nontestimonial hearsay is at issue, it is wholly consistent with
the Framers’ design to afford the States flexibility in their development of
hearsay law--as does Roberts, and as would an approach that exempted such
statements from Confrontation Clause scrutiny altogether. Where
testimonial evidence is at issue, however, the Sixth Amendment demands
what the common law required: unavailability and a prior opportunity for
cross-examination. We leave for another day any effort to spell out a
comprehensive definition of “testimonial.” Whatever else the term covers,
it applies at a minimum to prior testimony at a preliminary hearing, before a
grand jury, or at a former trial; and to police interrogations. These are the
modern practices with closest kinship to the abuses at which the
Confrontation Clause was directed. 

Id. (footnote omitted).
           Thus, the Court made it more difficult to admit testimonial hearsay against a
criminal defendant. As for nontestimonial hearsay, the Court indicated that the Roberts
analysis is more than sufficient. The exhibits at issue here were nontestimonial. Cf. id. at
1367 (indicating that the hearsay exception for business records covers nontestimonial
hearsay). Therefore, their admission did not violate the Confrontation Clause if they fall
within a firmly rooted exception to the hearsay rule.
           The public records exception to the hearsay rule applies to “[r]ecords, reports,
statements, or data compilations, in any form, of public offices or agencies setting forth:
(A) the activities of the office or agency . . . .” Tex. R. Evid. 803(8)(A). This is a firmly
rooted exception. See Cathy Cochran, Texas Rules of Evidence Handbook 844-45
& n.471 (5th ed. 2003) (stating that this exception existed at common law and tracing
predecessors to rule 803(8) back to 1871). Under the most recent predecessor to rule
803(8), indictments were admissible. See, e.g., Bravo v. State, 627 S.W.2d 152, 158
(Tex. Crim. App. 1982); see also Phillip D. Hardberger, Texas Courtroom
Evidence § 5.11(a), at 5-3 (5th ed. 2004) (“The Texas Rules of Civil and Criminal
Evidence have repealed Article 3731a, which dealt with the admissibility of official
records. The codified version is almost the same as Article 3731a.”).
           The Change of Plea order also falls within the public records exception. See
Cochran, supra, at 846 (listing “court-ordered judgments and sentences kept in the
court’s files” as an example of a record kept by a public agency of its own activities); see
also Wolfe v. Wolfe, 918 S.W.2d 533, 542 (Tex. App.--El Paso 1996, writ denied)
(holding that the written opinion of a New Zealand court was admissible under the public
records exception); Vanderhorst v. State, 821 S.W.2d 180, 183 (Tex. App.--Eastland
1991, pet. ref’d) (rejecting argument that trial court erred by allowing district clerk to
testify about contents of judge’s docket sheet to prove appellant did not appear for
arraignment because docketing statement was admissible under the public records
exception).
           As for the Stipulated Guilty Plea, it constitutes an admission to the extent that it
reflects Barela’s plea and is not hearsay. See Tex. R. Evid. 801(e)(2); Johnston v. Am.
Med. Int’l, 36 S.W.3d 572, 578 (Tex. App.--Tyler 2000, pet. denied). Barela specifically
complains that this exhibit contains a statement by Barela’s Arizona attorney, in which
the attorney says that he discussed the case with Barela and advised him of his rights and
that he believed the plea and disposition of the case were appropriate.


 Barela suggests
that this statement is relevant to whether the plea was voluntary. However, the
voluntariness of the plea was relevant in this case only to the extent that it reflected that
Barela actually committed the offenses in Arizona. Because Barela’s own witnesses
testified that he committed the offenses, evidence that Barela’s plea was voluntary was
harmless. See Leday, 983 S.W.2d at 718; Thomas, 621 S.W.2d at 164; Nixon, 940
S.W.2d at 690; Jackson, 888 S.W.2d at 914. Barela’s second issue is overruled.



           We also reject Barela’s argument that the indictment should not have been
admitted because it is not evidence of guilt and because it contains allegations of offenses
for which he was not convicted. An indictment is admissible at punishment to prove a
defendant’s prior criminal record, even if, as in this case, the defendant pleaded guilty to a
lesser charge. See Montes v. State, 870 S.W.2d 643, 648-49 (Tex. App.--El Paso 1994, no
pet.); Webb v. State, 840 S.W.2d 543, 547-48 (Tex. App.--Dallas 1992, no pet.). Barela’s
fourth issue is overruled.
           In his fifth issue, Barela claims that he was denied effective assistance of counsel
because his attorney failed to object to the admission of the Arizona court documents on
the ground that he was not properly identified as the person named in the documents. If
the State wishes to admit evidence of a prior criminal record, it must show that the record
is the defendant’s. Beck v. State, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986); Rosales
v. State, 867 S.W.2d 70, 72-73 (Tex. App.--El Paso 1993, no pet.). This can be done by
the testimony of a witness who identifies the accused as the person with the criminal
record or by matching a photograph of the defendant in a penitentiary packet or other
official record to the defendant. Smith v. State, 998 S.W.2d 683, 687 (Tex. App.--Corpus
Christi 1999, pet. ref’d).
           In this case, the State relied on the testimony of the Arizona prosecutor to establish
that Barela was the person identified in the Arizona court documents. When the State
initially tried to have the prosecutor identify Barela through a photograph, Barela
objected, claiming that the prosecutor recognized Barela. The prosecutor then testified
that he was in a courtroom with Barela on two occasions and had viewed photographs and
videotapes of him. Nevertheless, the prosecutor stated, “I don’t know how comfortable I
would be trying to identify him in court.” He further testified that he saw someone in the
courtroom who looked familiar, but he could not say for sure if it was Barela. When
asked to point to the person he was talking about, the prosecutor pointed to Barela. The
prosecutor then identified Barela again, using a photograph from his own files.
           Barela argues that the prosecutor did not properly identify him because he relied
on an unofficial photograph from his own files. He therefore asserts that his trial counsel
should have objected to the admission of the Arizona court documents on the ground that
he was not properly identified.
           We first note that trial counsel’s reasons for not objecting do not appear in the
record. This omission is fatal to an ineffective assistance claim. See Rylander v. State,
101 S.W.3d 107, 111 (Tex. Crim. App. 2003); Mallett v. State, 65 S.W.3d 59, 63 (Tex.
Crim. App. 2001). Second, although the prosecutor was reluctant to identify Barela, the
record reflects that he did in fact identify him before he referred to the photograph. We
believe this identification was sufficient. Therefore, trial counsel was not ineffective in
failing to object to the Arizona court documents on this ground. See Ortiz v. State, 93
S.W.3d 79, 93-95 (Tex. Crim. App. 2002), cert. denied, 123 S.Ct. 1901, 155 L.Ed.2d 824
(2003). Barela’s fifth issue is overruled.
Challenge for Cause
           In his third issue, Barela argues that the trial court erred by refusing to grant his
challenge for cause of a prospective juror.
Background
           During voir dire, Barela’s counsel discussed a hypothetical situation in which the
State indicts a person for committing murder with a gun, but proves at trial that the
defendant committed the murder with a knife. Counsel asked the prospective jurors
whether they would be able to acquit the defendant in that situation. As the prospective
jurors struggled with this question, the trial court attempted to clarify that the crux of the
question was whether the jurors would hold the State to its burden of proof. At one point,
the court stated:
Okay. This is the issue. If the proof doesn’t match the charge,
meaning--let me tell you this. If they charge somebody with murder, but
they prove to you beyond a reasonable doubt that he robbed him, are you
going to convict him of murder because you’re convinced beyond a
reasonable doubt that he committed a robbery?
 
Now, the issue is are you going to hold the State to its burden of
proving their accusation or are you going to allow them to prove something
other than what they alleged? Do you understand me?

. . .
Now, let me also say this. That if the State were to prove that, if they
were to come in here . . . I would hope they at least had some idea of what
their case was about. If they were to come in here and prove--

           [Defense Counsel:] Your Honor--
 
[The Court:] I understand. I’m going to tell you this much. . . . [I]f they
allege shooting with a gun and they prove knife, I’ll tell you one thing right
now, I’d take it away from the jury. All right. Just to let you know that. I
would probably take it away from them in the first place. But you may ask
your question. 

Some time after the trial court’s comments, Prospective Juror 15 stated that he would not
acquit the defendant.
           Later, Prospective Juror 15 was questioned individually about the hypothetical. 
The prosecutor twice pointed out that if the State pleads something and fails to prove it,
“then he walks.” Each time, the juror stated that “ethically” he would “have to follow the
law” and acquit the defendant. When Barela’s counsel questioned him further, the juror
asked whether the acquitted defendant could be tried again. The trial court informed him
that what happens after the trial is not relevant and that “[t]he issue is whether the State
has proved each and every element of the charge in the indictment to the jury . . . .” The
juror responded, “My point is if I would--if after you guys would probably give me all the
information I needed, I would have to. Ethically I would have to let him, I would have to
follow the law.” The court then gave the juror another hypothetical and asked:
So the question is if they fail to prove what they have alleged in the
indictment beyond a reasonable doubt, can you hold the State to its burden
or are you going to allow them to avoid proving each and every element
beyond a reasonable doubt because you believe something really bad has
happened and you want somebody to get it?

The juror answered that he would hold the State to its burden.
           Barela’s counsel then challenged the juror on the ground that he would not follow
the law. The court denied the challenge. Before exercising his peremptory strikes,
Barela’s counsel requested an additional peremptory strike because the court denied the
challenge for cause of Prospective Juror 15. The court denied the request. After each
side exercised its peremptory strikes, the names of the jurors, including Prospective Juror
15, were called. Barela’s counsel objected to the seating of Prospective Juror 15, noted
that he had used all his peremptory strikes, and asked for an additional peremptory strike. 
The court denied this request.
Discussion
           The Court of Criminal Appeals recently held, “To preserve error with respect to a
trial court’s denial of a challenge for cause, an appellant must: (1) assert a clear and
specific challenge for cause; (2) use a peremptory strike on the complained-of
veniremember; (3) exhaust his peremptory strikes; (4) request additional peremptory
strikes; (5) identify an objectionable juror; and (6) claim that he would have struck the
objectionable juror with a peremptory strike if he had one to use.” Allen v. State, 108
S.W.3d 281, 282 (Tex. Crim. App. 2003) (emphasis added). The court had previously
held that harm is demonstrated when four of the requirements listed in Allen are present. 
See Johnson v. State, 43 S.W.3d 1, 5-6 (Tex. Crim. App. 2001) (“[H]arm has been
demonstrated . . . when the appellant (1) exercised his peremptory challenges on the
venire member whom the trial court erroneously failed to excuse for cause, (2) exhausted
his peremptory challenges, (3) was denied a request for additional peremptory challenges,
and (4) identified an objectionable juror who sat on the case.”) (emphasis added).
           Barela did not exercise one of his peremptory strikes on Prospective Juror 15.


 
Therefore, he has failed to preserve any error in the trial court’s denial of his challenge
for cause of that juror. For the same reason, we also conclude that Barela was not harmed
by the denial of his challenge for cause of Prospective Juror 15.
           In any event, the trial court did not err in denying the challenge for cause. Barela
contends that Prospective Juror 15 exhibited a bias against the law applicable to the case
and that the trial court’s comments about taking the case away from the jury improperly 
influenced the juror to say that he would follow the law.
           We review the denial of a challenge for cause for an abuse of discretion based on
the voir dire as a whole. Swearingen v. State, 101 S.W.3d 89, 98-99 (Tex. Crim. App.
2003). When the defendant asserts that a prospective juror is biased against the law, the
issue is whether the prospective juror’s beliefs would prevent or substantially impair him
from following the law. Id. at 99; see Tex. Code Crim. Proc. Ann. art. 35.16(c)(2)
(Vernon Supp. 2004-05). When the challenged juror vacillates or equivocates, we accord
great deference to the trial judge, who had the better opportunity to see and hear the
challenged juror. Swearingen, 101 S.W.3d at 99.
           Prospective Juror 15 initially indicated that he would have a problem acquitting a
defendant who had clearly committed an offense, even though the State failed to prove all
the allegations in the indictment. After further questioning, however, he repeatedly stated
that he would be ethically bound to follow the law. Under these circumstances, we
cannot say that the trial court, which observed Prospective Juror 15’s demeanor, abused
its discretion in denying the challenge for cause. We also note that Barela did not object
when the trial court informed the venire that the case would be taken away from the jury
in the hypothetical situation posed by defense counsel. See Tex. R. App. P. 33.1(a). 
Barela’s third issue is overruled.
Legal Impossibility
           In his sixth issue, Barela argues that it was legally impossible for him to have
committed the offense described in the second count of the indictment. According to
Barela, the second count charges that in committing the aggravated robbery, he caused
bodily injury to Josie Gonzalez by shooting Jose Gonzalez. Barela logically asserts that it
would have been impossible to injure Josie Gonzalez by shooting Jose Gonzalez. But in
making this argument, Barela ignores the fact that the typewritten name Jose is crossed
out in the indictment and the name Josie appears in handwriting underneath it.
           A matter of form or substance in an indictment may be amended before trial and
after notice to the defendant. Tex. Code Crim. Proc. Ann. art. 28.10(a) (Vernon 1989). 
The defendant is entitled to at least ten days to respond to an amended indictment. Id. 
The amendment may be effected by interlining the original indictment. Riney v. State, 28
S.W.3d 561, 565 (Tex. Crim. App. 2000); Serna v. State, 69 S.W.3d 377, 379 (Tex. App.--El Paso 2002, no pet.).
           Immediately before voir dire, while discussing motions in limine, the trial court
stated, “You filed a motion to amend the indictment?” The following discussion then
occurred:
Prosecutor: Judge, if memory serves, that was when we came down here
last time and we were getting ready to do voir dire and that issue came up,
that we made a motion to amend that indictment, which was granted.
 
The Court: Yes, it was.
 
Prosecutor: And that the defense was then entitled to ten days which they
wanted. And that was the reason that we reset the case. So I haven’t been
able to locate the transcript of that hearing to check that. But that’s my
memory of what happened.
 
Defense Counsel: I don’t even remember if we had a hearing, to tell you
the truth.

The record thus reflects that the trial court granted a motion by the State to amend the
indictment. Defense counsel neither disputed nor objected to the prosecutor’s and the
trial court’s representation that a motion to amend the indictment had been granted. As
noted above, the only indictment in the record has been interlined to change Jose to Josie. 
While reading the second count of the indictment at the beginning of the trial, the
prosecutor stated that Barela “caused bodily injury to Josie Gonzalez by shooting Josie
Gonzalez . . . .” Defense counsel made no objection and entered a plea of not guilty for
his client.
           We conclude that the indictment was properly amended to change Jose to Josie. 
See Riney, 28 S.W.3d at 566. Therefore, Barela’s legal impossibility argument is without
merit. Barela’s sixth issue is overruled.
Eligibility for Community Supervision
           In his seventh issue, Barela argues that the trial court erred by refusing to instruct
the jury that his Arizona guilty pleas were not convictions for purposes of determining
whether he was eligible for community supervision. He argues that the Arizona guilty
pleas did not result in a final conviction because he had not been sentenced and because
he had filed an appeal.
           A jury may recommend community supervision if it finds that the defendant has
never been convicted of a felony in any state and if it assesses punishment at ten years or
less. Tex. Code Crim. Proc. Ann. art. 42.12, § 4(a), (d)(1), (d)(3), (e) (Vernon Supp.
2004-05). Eligibility for community supervision becomes moot when the jury assesses
punishment in excess of ten years. Jackson v. State, 628 S.W.2d 446, 449 (Tex. Crim.
App. [Panel Op.] 1982). In that situation, the jury cannot consider community
supervision. Id.
           Although the court refused to give the instruction requested by Barela, the court
did instruct the jury that it could recommend community supervision if it found that
Barela had never been convicted of a felony in any state and if it assessed punishment at
ten years or less. The jury assessed punishment at forty years. Because this punishment
far exceeds ten years, the trial court’s refusal to give Barela’s requested instruction
regarding eligibility for community supervision is moot. See Jackson, 628 S.W.2d at 449. 
For the same reason, the refusal was also harmless. Crouch v. State, 702 S.W.2d 660,
663 (Tex. App.--Tyler 1985, pet. ref’d). Barela’s seventh issue is overruled.
Motion to Suppress 
           In his eighth and ninth issues, Barela argues that the trial court erred by denying
his motion to suppress his statement and all other evidence obtained as a result of his
arrest. This argument is based on his assertion that the police did not comply with the
provisions in chapter 51 of the Code of Criminal Procedure regarding the arrest of
fugitives from justice. See Tex. Code Crim. Proc. Ann. arts. 51.03-.04, 51.13 (Vernon
1979).
Background
           Barela filed motions to suppress confessions, statements, and physical evidence. 
The motions did not mention chapter 51. At the hearing on the motions, the police
testified that Barela was arrested pursuant to Arizona warrants that charged him with
escape and failure to appear in court. Barela’s counsel did not make an opening statement
or closing argument, nor did he mention chapter 51 at any time.
           During the guilt/innocence phase of the trial, a redacted version of Barela’s
statement was admitted into evidence. In the statement, Barela states that he, Perez, and
Talamantes drove to Scenic Drive. They decided they needed some money, so he took a
wallet from a couple of people who were standing by a car. After taking the wallet, he
heard gun shots. He was not sure whether Perez shot at someone or someone shot at
Perez. They got into their car and took off.
           During the punishment phase of the trial, the State moved to admit Barela’s
unredacted statement. Defense counsel announced, “No objection, Your Honor.” In the
unredacted statement, Barela states, “I was convicted in Arizona for robbing two people
in a hotel. I was in the Mojave County Jail and I escaped from there.” He also admitted
that he, Perez, and Talamantes “took another car” after they robbed the couple on Scenic
Drive. They took the radio and speakers from that car.
Discussion
           In his argument under his eighth and ninth issues, Barela claims that admitting his 
statement into evidence harmed him because it contained evidence of extraneous
offenses. He requests that his punishment be set aside and that he be granted a new trial
on punishment. In his statement of facts, Barela only discusses the admission of the
unredacted statement in the punishment phase and not the admission of the redacted
statement in the guilt/innocence phase. Therefore, we assume that Barela is only
challenging the admission of the unredacted statement in the punishment phase, and not
the redacted statement in the guilt/innocence phase.



           The State argues that Barela’s complaint about the admission of the unredacted
statement at the punishment phase is not preserved for three reasons. We agree with each
of these reasons.
           First, Barela waived any error by affirmatively stating that he had no objection to
the admission of the statement. When the trial court denies a pretrial motion to suppress,
the defendant need not object at trial to the admission of evidence that was the subject of
the suppression motion. Garza v. State, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004);
Traylor v. State, 855 S.W.2d 25, 26 (Tex. App.--El Paso 1993, no pet.). But if the
defendant affirmatively states that he has no objection to the evidence when it is offered
at trial, the defendant waives any error in the denial of the suppression motion. Norris v.
State, 902 S.W.2d 428, 439 (Tex. Crim. App. 1995); Jones v. State, 833 S.W.2d 118, 126
& n.16 (Tex. Crim. App. 1992); Traylor, 855 S.W.2d at 26. Here, Barela’s counsel stated
“No objection” when the unredacted statement was admitted at the punishment phase. 
Barela has therefore waived any error in the denial of his motion to suppress the
statement.
           Second, Barela did not raise the issue of compliance with chapter 51 of the Code
of Criminal Procedure at any time in the trial court. As a prerequisite to presenting a
complaint for appellate review, the complaining party must first raise the specific
complaint in the trial court. Tex. R. App. P. 33.1(a)(1). A motion to suppress evidence is
a specialized objection that must adhere to the requirement of specificity in objections. 
Bradley v. State, 960 S.W.2d 791, 800 (Tex. App.--El Paso 1997, pet. ref’d). Because
Barela did not specifically complain to the trial court that the police violated chapter 51,
that complaint is not preserved for our review. See id.; Urquhart v. State, 128 S.W.3d
701, 704 (Tex. App.--El Paso 2003, pet. ref’d); Leno v. State, 934 S.W.2d 421, 423 (Tex.
App.--Waco 1996), pet. dism’d, improvidently granted, 952 S.W.2d 860 (Tex. Crim. App.
1997).
           Third, other unobjected-to evidence that was admitted at the punishment phase
proved that Barela committed the extraneous offenses described in his statement. As
explained above, the admission of inadmissible evidence is harmless when the same or
similar evidence is admitted without objection. Leday, 983 S.W.2d at 718; Thomas, 621
S.W.2d at 164; Nixon, 940 S.W.2d at 690; Jackson, 888 S.W.2d at 914.
           Talamantes testified that Barela and Perez stole a car after robbing Espinoza and
Gonzalez and that they took a stereo and speaker box from the car. The owner of the car
also testified that two men fitting the description of Barela and Perez stole the car and
took the radio and speaker box. Two of Barela’s defense witnesses acknowledged on
cross-examination that Barela shot two people at a hotel in Arizona and escaped from jail
there. Barela did not object to any of this testimony. Because this testimony establishes
the same facts that Barela’s statement establishes, the admission of the statement was
harmless.



           Barela’s eighth and ninth issues are overruled.
Conclusion
           For the reasons stated herein, the judgment of the trial court is affirmed.
 
                                                                  SUSAN LARSEN, Justice
September 30, 2004

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.

(Do Not Publish)